UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PRIME TANNING CO., INC. and | ) | |
| PRIME TANNING CORP., | ) | |
| | ) | |
| Plaintiffs | ) | Civil No. 1:09-cv-359-JAW |
| | ) | |
| v. | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

# STATEMENT OF MATERIAL FACTS[1]

A. Underlying Civil Actions

1.  The following civil actions (hereinafter "Underlying Petitions") have been filed that include both Prime Tanning Co., Inc. and Prime Tanning Corp. as named Defendants:

    a.  *Paula Bicket v. Eteroutremer S.A., et al.*, Docket No. 09-CN-CV-00457 (Circuit Court of Clinton County, State of Missouri), filed on or about June 5, 2009.

---

[1] There is little guidance in the case law on the role of the Statement of Material Facts in the context of summary judgments on the duty to defend, especially in cases with voluminous underlying complaints. Technically, the entire underlying complaint is relevant to the inquiry and must be compared with the insurance policy, yet repeating verbatim voluminous complaints in a Statement of Material Facts would seem to frustrate the purpose of the Statement. Attempts to "characterize" allegations in the underlying complaint perhaps render them more akin to argument than "fact," and invite the response that the complaint speaks for itself. This Statement of Material Facts represents Plaintiffs' effort to strike an appropriate balance by including general observations regarding many of the substantive allegations in the underlying petitions relevant to the coverage issues. As a practical matter, the Court should review the entire underlying petitions in connection with the duty to defend analysis even though those entire petitions are not repeated verbatim in the Statement of Material Facts.

b.  *Blane Fife v. Eteroutremer S.A., et al.*, Docket No. 09-CN-CV-00458 (Circuit Court of Clinton County, State of Missouri), filed on or about June 5, 2009.

c.  *Cyndee Gardner v. Rockwool Industries, Inc., et al.*, Docket No. 08-CN-CV-00692 (Circuit Court of Clinton County, State of Missouri), filed on or about August 21, 2008; removed to the United States District Court for the Western District of Missouri on or about July 22, 2009 and re-captioned *Roger Wayne Osborn and David Leon Osborn as Co-Trustees of the Merlin Osborn Declaration of Trust v. Prime Tanning Corp., et al.*, Docket No. 5:09-CV-06082-GAF.

d.  *Maycee Gardner, et al. v. Prime Tanning Corp., et al.*, Docket No. 09-DK-CC-00056 (Circuit Court of Dekalb County, State of Missouri), filed on or about April 27, 2009; change of venue to Ray County and now Docket No. 09-RY-CV-01273.

e.  *Carol Helms v. Rockwool Industries, Inc., et al.*, Docket No. 08-CN-CV-00693 (Circuit Court of Clinton County, State of Missouri), filed on or about August 26, 2008; Amended Class Action Petition Medical Monitoring filed on or about April 23, 2009.

f.  *S. Beery, et al. v. Prime Tanning Corp., et al.*, Docket No. 09-BU-CV-06421 (Circuit Court of Buchanan County, State of Missouri), filed on or about December 17, 2009.

g.  *William Kemper v. Prime Tanning Corp., et al.*, Docket No. 09-CN-CV-00333 (Circuit Court of Clinton County, State of Missouri), filed on or about April 22, 2009.

h.  *Beverly Long, et al. v. Prime Tanning Corp., et al.*, Docket No. 09-CN-CV-00422 (Circuit Court of Clinton County, State of Missouri), filed on or about May 29, 2009; First Amended Petition for Damages filed on or about June 3, 2009; Second Amended Petition for Damages filed on or about January 29, 2010.

i.  *Jannette Meyer v. Eteroutremer S.A., et al.*, Docket No. 09-CN-CV-00541 (Circuit Court of Clinton County, State of Missouri), filed on or about July 10, 2009.

j.  *Ruth Nicholson, et al. v. Prime Tanning Corp., et al.*, Docket No. 09-DK-CC-00052 (Circuit Court of Dekalb County, State of Missouri), filed on or about April 24, 2009; removed to the United States

        District Court for the Western District of Missouri on or about July 22, 2009; dismissed without prejudice on September 29, 2009.

    k.    *Verline Reid v. Eteroutremer S.A., et al.*, Docket No. 09-CN-CV-00459 (Circuit Court of Clinton County, State of Missouri), filed on or about June 5, 2009.

    l.    *Jill Smith, et al. v. Prime Tanning Co., Inc., et al.*, Docket No. 09-BU-CV-0441 (Circuit Court of Buchanan County, State of Missouri), filed on or about August 21, 2009.

    m.    *Mary Williamson, et al. v. Prime Tanning Corp., et al.*, Docket No. 09-DK-CC-00217 (Circuit Court of Dekalb County, State of Missouri), filed on or about December 16, 2009.

See Stipulation of Facts, ¶¶ 1-14 and Exhibits 1-17 attached thereto.

    2.    All of the Underlying Petitions allege that Prime Tanning Corp. owned and operated a leather tanning facility in St. Joseph, Missouri and that certain chemicals were used to remove hair and other matter from hides in the tanning process.

    3.    All of the Underlying Petitions allege that the tanning process generated a sludge byproduct that contained certain chemicals and that this product was spread on farms in several counties in Missouri as a fertilizer.

    4.    All of the Underlying Petitions allege that the spreading of the product giving rise to the claims occurred either "from at least 1983 through early 2009" or "from 1983 to 2009." For example, compare *Bicket*, Stip. Exh. #1-A, ¶ 33 with *Osborn*, Stip. Exh. #4, ¶ 20.

    5.    Some of the Underlying Petitions allege specifically that "the sludge was distributed as a useful product – land applied fertilizer." See, e.g., *Osborn*, Stip. Exh. #4,

¶ 22; *Beery*, Stip. Exh. #8, ¶ 35; *Smith*, Stip. Exh. #16, ¶ 15; *Williamson*, Stip. Exh. #17, ¶ 12.

6. Some of the Underlying Petitions include specific allegations with respect to the conversion process from hexavalent chromium to trivalent chromium "and allege a 'sudden and accidental' reconversion back to hexavalent chromium." See, e.g., *Osborn*, ¶ 15; *Kemper*, Stip. Exh. #9-A, ¶ 16; *Long*, Stip. Exh. #12, ¶ 15; *Smith*, Stip. Exh. #16, ¶ 17; *Williamson*, Stip. Exh. #17, ¶ 14.

7. Some of the Underlying Petitions allege that portions of the sludge "became airborne in the application process." See, e.g., *Osborn*, ¶ 22; *Beery*, ¶ 41; *Kemper*, ¶ 20; *Long*, ¶ 15; *Smith*, ¶ 17; *Williamson*, ¶ 14.

8. All of the Underlying Petitions contain allegations of either physical or emotional injury to persons or physical damage to or loss of use of property.

9. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-027 that was in effect for the policy period of 5/1/77 to 7/1/78. See Stipulation, ¶ 15 and Exhibit #18 attached thereto.

10. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-028 that was in effect for the policy period of 7/1/78 to 7/1/79. See Stipulation, ¶ 16 and Exhibit #19 attached thereto.

11. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no.

LG1-112-058114-020 that was in effect for the policy period of 7/1/80 to 7/1/81.  See Stipulation, ¶ 17 and Exhibit #20 attached thereto.

12. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-021 that was in effect for the policy period of 7/1/81 to 7/1/82.  See Stipulation, ¶ 18 and Exhibit #21 attached thereto.

13. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-022 that was in effect for the policy period of 7/1/82 to 7/1/83.  See Stipulation, ¶ 19 and Exhibit #22 attached thereto.

14. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-023 that was in effect for the policy period of 7/1/83 to 7/1/84.  See Stipulation, ¶ 20 and Exhibit #23 attached thereto.

15. Liberty Mutual issued a Comprehensive General Liability Policy to the named insured identified as "Prime Tanning Co., Inc. and as per End. #1" with policy no. LG1-112-058114-024 that was in effect for the policy period of 7/1/84 to 7/1/85.  See Stipulation, ¶ 21 and Exhibit #24 attached thereto.

16. All of the Liberty Mutual policies list Prime Tanning Co., Inc. as a named insured.  See Stipulation Exhibits #18-24.

17. All of the Liberty Mutual policies include an Endorsement #1 that changes the name of the insured to include other entities. See Endorsement #1 to Stipulation Exhibits #18-24.

18. All of the Liberty Mutual policies name as an insured in Endorsement #1 The Blueside Companies, Inc. See Endorsement #1 to Stipulation Exhibits #18-24.

19. Berkshire Tanning Corp. was added as a named insured effective September 4, 1981 by Endorsement #13 to the policy in effect from 7/1/81 to 7/1/82, and Berkshire Tanning Corp. has remained a named insured on every Liberty Mutual policy after that date. See Stipulation Exhibits #18-24.

20. Each of the Liberty Mutual policies includes a form titled "Comprehensive General Liability Policy" which contains a grant of coverage reading as follows:

> COVERAGE A—BODILY INJURY LIABILITY
>
> COVERAGE B—PROPERTY DAMAGE LIABILITY
>
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> > Coverage A. bodily injury or
> > Coverage B. property damage
>
> to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

See Stipulation Exhibits #18-24.

21. Each of the Liberty Mutual policies defines certain terms, including the following:

> "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefore;
>
> "named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;
>
> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
>
> "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

See Stipulation Exhibits #18-24.

22. Each of the Liberty Mutual policies contains an exclusion that reads as follows:

> Exclusions
>
> This policy does not apply:
>
> (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors,

7

>soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

See Stipulation Exhibits #18-24.

23. The premium for each of the Liberty Mutual policies was computed in accordance with a Composite Rate Endorsement (Form L-G 6026) or Composite Rate Plan (Form LG 6003) to each Liberty Mutual policy that provided, *inter alia*, that the premium shall be computed on the basis of workers' compensation payroll. See Stipulation Exhibits #18-24.

24. Item 4 of the declaration page for each Liberty Mutual policy sets forth the basis for the calculation of premiums using workers' compensation payroll for the separate locations of the insured's operations covered by each policy. See Stipulation Exhibits #18-24.

25. The operations identified in Item 4 of the declarations for "Prime Tanning Co., Inc." are operations relating to Maine business locations in the State of Maine. See Stipulation Exhibits #18-24.

26. The operations identified in Item 4 of the declarations for "The Blueside Companies, Inc." are operations relating to Missouri business locations in the State of Missouri. See Stipulation Exhibits #18-24.

27. As measured by premium calculations, the predominant location of the risks insured under the Liberty Mutual policies was Maine for each insurance policy year. See Stipulation Exhibits #18-24.

28. On or about February 28, 1985, Berkshire Tanning Corp. and The Blueside Companies, Inc. merged with the surviving entity being Berkshire Tanning Corp. See Stipulation, ¶ 24 and Exhibit #26 attached thereto.

29. On or about November 17, 1986, Berkshire Tanning Corp. registered "The Blueside Companies" as a fictitious name. See Stipulation, ¶ 25 and Exhibit #27 attached thereto.

30. On or about June 16, 1993, The Blueside Co., Inc. was organized as a corporation under the laws of the State of Missouri. See Stipulation, ¶¶ 26, 27 and Exhibits #28, 29 attached thereto.

31. On June 24, 1993, Berkshire Tanning Corp. and The Blueside Co., Inc. merged with the surviving corporate entity being The Blueside Co., Inc. See Stipulation, ¶¶ 28, 29 and Exhibits #30, 31 attached thereto.

32. On December 11, 1995, The Blueside Co., Inc. changed its name to Prime Tanning Corp. See Stipulation, ¶¶ 30, 31 and Exhibits #32, 33 attached thereto.

33. By letter dated September 9, 1987, Liberty Mutual advised Prime Tanning Company, Inc. that it agreed to provide a defense and indemnification to Prime Tanning in connection with the Union Chemical waste disposal site located in Maine. See Affidavit of David Rosenblatt, ¶ 3, Exhibit A.

34. By letter dated March 31, 1988, Liberty Mutual informed Prime Tanning Company, Inc. that it agreed to provide Prime Tanning with a defense and indemnification in connection with claims arising out of the Re-Solve waste disposal site located in Massachusetts. See Affidavit of David Rosenblatt, ¶ 4, Exhibit B.

35. By letter dated March 23, 1988, Liberty Mutual informed Prime Tanning Company, Inc. that it agreed to provide The Blueside Company, Inc. a defense and indemnification to claims arising out of the Wheeling waste disposal site in Missouri. See Affidavit of David Rosenblatt, ¶ 5, Exhibit C.

36. The Liberty Mutual insurance policies involved in the decisions regarding the Union Chemical, Re-Solve and Wheeling disposal sites identified in Paragraphs 33-35 above are insurance policies included within the insurance policies attached to the Stipulation of Facts submitted by the parties in this case.

37. Liberty Mutual was placed on notice of all the Underlying Petitions attached to this Stipulation and has denied both a duty to defend and duty to indemnify in each action.

Dated at Portland, Maine this 12th day of April, 2010.

/s/ James D. Poliquin
James D. Poliquin, Esq.
Attorney for Plaintiffs

NORMAN, HANSON & DeTROY, LLC
415 Congress Street
P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000
jpoliquin@nhdlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Certificate of Service

    I hereby certify that on April 12, 2010, I electronically filed Plaintiffs' Statement of Material Facts with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

| | |
|---|---|
| Michael Richards, Esq. | John C. Sullivan, Esq. |
| Troubh Heisler | Post & Schell, P.C. |
| 511 Congress Street | Four Penn Center |
| P.O. Box 9711 | 1600 John F. Kennedy Blvd. -13th floor |
| Portland, ME  04104-5011 | Philadelphia, PA  19103 |
| mrichards@troubhheisler.com | jsullivan@postschell.com |

    /s/ James D. Poliquin, Esq.
    Norman, Hanson & DeTroy, LLC
    415 Congress Street
    P.O. Box 4600
    Portland, ME  04112-4600
    (207) 774-7000
    jpoliquin@nhdlaw.com