UNITED STATES DISTRICT COURT
for the
**DISTRICT OF MAINE**

| | |
|---|---|
| PRIME TANNING CO., INC. and<br>PRIME TANNING CORP.,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>　　　　　Defendant. | CIVIL ACTION NO. **09-cv-359-B-W** |

**STATEMENT OF MATERIAL FACTS OF DEFENDANT**
**LIBERTY MUTUAL INSURANCE COMPANY**

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") submits this Statement of Material Facts pursuant to Rule 56(b) of the Local Rules of the United States District Court for the District of Maine in support of its motion for summary judgment.

**The Parties**

1. Plaintiff, Prime Tanning Co., Inc. is a Maine corporation with its principal place of business in Maine. (Complaint, ¶ 1.)

2. Plaintiff, Prime Tanning Corp. is a wholly-owned subsidiary of Prime Tanning Co., Inc. At the time the complaint was filed in this matter, Prime Tanning Corp. was a Missouri corporation with its principal place of business in Missouri. (Complaint, ¶ 2.)

3. Defendant Liberty Mutual is a Massachusetts insurance company with its principal place of business in Massachusetts.

**The Missouri Sludge Suits**

4. In the complaint filed in this suit, Prime Tanning Co., Inc. and Prime Tanning Corp. (collectively, "Prime Tanning") sought a judgment declaring that Liberty Mutual had an obligation to defend eight suits ("Missouri Sludge Suits"), which were filed by plaintiffs Bicket, Fife, Cyndee Gardner, Helms, Kemper, Long, Nicholson, and Reid. (Complaint, ¶ 5.)

5.      While this declaratory judgment action has been pending, additional Missouri Sludge Suits have been filed against Prime Tanning by, among others, plaintiffs Beery, Maycee Gardner, Meyer, Smith, and Williamson. (Stipulation of Facts, ¶¶ 5, 7, 10, 13, and 14.)

6.      The plaintiffs in the Bicket, Fife, Kemper, Long, Reid, Maycee Gardner, Meyer, Smith and Williamson suits seek recovery for bodily injury. (Stipulation of Facts, Exhibits Nos. 1, 1-A, 2, 5, 9, 9-A, 10, 11, 12, 13, 15, 16 and 17.)

7.      The plaintiffs in the Cyndee Gardner and Beery suits seek recovery for property damage. (Stipulation of Facts, Exhibits Nos. 3, 3-A, and 8.)

8.      The plaintiffs in the Helms and Nicholson suits seek to recover the costs of future diagnostic testing to detect latent injuries that may develop as a result of exposure to sludge. (Stipulation of Facts, Exhibits Nos. 7, 14.)

9.      The petitions and amended petitions in the Missouri Sludge Suits contain many common factual allegations, which are identical or substantively identical to the following allegations in the Petition for Damages filed by Maycee Gardner:

> 7.      Prime Tanning Corp., a wholly owned subsidiary of Prime Tanning Co., Inc., and Prime Tanning Co., Inc. (hereinafter referred to collectively as "Prime") owned and operated a leather tanning facility at 205 Florence Road in St. Joseph, Missouri until the first quarter of 2009 . . . .
>
> 9.      Hexavalent chromium is a toxic chemical and is classified as a known human cancer causing agent.
>
> 10.     From at least 1983 through early 2009, Prime utilized hexavalent chromium to remove hair from its hides in the tanning process. The waste product from this process was collected as "sludge" that contains hexavalent chromium.
>
> 13.     From at least 1983 through early 2009, Prime hauled thousands of tons of sludge containing hexavalent chromium to Missouri farms, including farms in Andrew, Buchanan, DeKalb and Clinton counties, and applied thousands of tons of sludge containing hexavalent chromium to such farms with a spreader. The sludge was applied free of charge to farmers as fertilizer so that Prime could avoid the costs of landfilling the sludge.

> 14.   The sludge applied to fields in Missouri contains hazardous levels of hexavalent chromium that is above acceptable limits of human exposure. Portions of the sludge became airborne in the application process.
>
> 17.   As a direct and proximate result of Maycee Garnder's exposure to hexavalent chromium in the Prime sludge, Maycee developed two tumors in the right frontal lobe of her brain, among other injuries and illnesses.

(*See* Maycee Gardner Petition for Damages, ¶¶ 7, 9, 10, 13, 14, and 17; Stipulation of Facts, Exhibit 5; *see also* Bicket First Amended Petition for Damages, ¶¶ 11, 33, Exhibit 1-A; Fife Petition for Damages, ¶¶ 11, 33, Exhibit 2; Cyndee Gardner Amended Class Action Petition, ¶¶ 32, Exhibit 3-A; Osborn Second Amended Petition, ¶ 11, 13, Exhibit 4; Helms Amended Class Action Petition, ¶¶ 32, Exhibit 7; Beery Petition, ¶ 33, Exhibit 8; Long Second Amended Petition for Damages, ¶¶ 11, 13, 18, Exhibit 12; Meyer Petition for Damages, ¶¶ 11, 33 Exhibit 13; Nicholson First Amended Class Action, ¶¶ 12, Exhibit 14; Reid Petition for Damages, ¶¶ 11, 33, Exhibit 15; Smith Petition for Damages, ¶¶ 13, 20, Exhibit 16; Williamson Petition for Damages, ¶¶ 10, 17, Exhibit 17.)

10.   Certain of the Missouri Sludge Suits allege that Prime Corp. and Elementis LTP LP ("Elementis") formed a joint venture called Wismo Chemical Corp. ("Wismo") which engaged in the conversion of hexavalent chromium to trivalent chromium at Prime Corp.'s facility in St. Joseph, Missouri. (*See* Osborn Second Amended Petition, ¶ 15, Exhibit 4; Beery Petition, ¶ 37, Exhibit 8; Kemper First Amended Petition, ¶ 16, Exhibit 9-A; Long Second Amended Petition, ¶ 15, Exhibit 12; Smith Petition, ¶ 17, Exhibit 16; Williamson Petition, ¶ 14, Exhibit17.)

## Missouri Department of Natural Resources Records

11.   On August 17, 1983, the Missouri Department of Natural Resources ("MDNR") issued a Letter of Approval to Blueside Companies, Inc. ("Blueside") for the land application of

sludge generated by the wastewater treatment facility at the Blueside leather tannery in St. Joseph, Missouri. (Stipulation of Facts, Exhibit 25.)

12. The Specifications included in the Letter of Approval specified that the sludge was to be surface spread with a "Big Wheels MFG" Model 8003, dry sludge applicator owned by Blueside and that a special over-dimension permit for use on Missouri roads had been obtained. (*Id.*)

13  The Conditions to the Letter of Approval set forth the criteria which were the basis for approving the land application program. These criteria included, *inter alia*, a Sludge Monitoring Schedule, Sludge Quality Limiting Parameters, Soil Analysis and Application Rates. (*Id.*)

14. The Sludge Quantity criterion established in the Letter of Approval was 3000 dry tons per year at the time of approval with a limit of 5 dry tons of sludge per acre per year. (*Id.*)

15. Approval was further conditioned on daily sampling of the chemical constituents of the sludge, including testing for the amount of chromium included in the sludge, to ensure that Blueside would comply with the limiting parameters of 15.4 lbs./dry ton of total chromium in the sludge. (*Id.*)

16. On September 25, 1992, Blueside submitted a National Pollutant Discharge Elimination System (NPDES) Permit Application and Engineering Report to MDNR with respect to its sludge application program. (*Id.*)

17. The cover letter in connection with the NPDES Permit Application states: "We have been operating under a Letter of Approval from the D.N.R. (LA-7000-620-0) for the past 9 years." (*Id.*)

18. Table 1 to the NPDES application sets forth the years in which Blueside had applied sludge to farm fields, the number of fields to which the sludge was applied in each year, the number of acres of farm fields to which the sludge was applied in each year, and the amount

4

of sludge applied in wet tons and dry tons. (*Id.*) The first year identified in Table 1 is 1983. (*Id.*)

19. Table 2 to the NPDES application sets forth data concerning the 1991 land application, including dates of application, tons of sludge applied per field, tons of dry sludge per acre and pounds of chromium per acre.

### The Liberty Mutual Policies

20. Liberty Mutual issued one-year Comprehensive General Liability policies to Prime Tanning Co., Inc. from May 1, 1977 to July 1, 1979 and from July 1, 1980 to July 1, 1985. (Stipulation of Facts, Exhibits 18 to 24.)

21. Section I in each of the Liberty Mutual policies states in relevant part:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> Coverage A. **bodily injury** or
>
> Coverage B. **property damage**
>
> to which this policy applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

(*Id.*)

22. The terms "bodily injury" and "property damage" are defined in each of the Liberty Mutual policies as follows:

> "**bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
>
> "**property damage**" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period[.]

5

(*Id.*)

23.     Item 2 of the declarations page of each of the policies identifies the Policy Period with a specifically identified start and end date. (*Id.*) Each policy was in effect from "12:01 A.M., standard time at the address of the named insured as stated herein." (*Id.*)

24.     Each of the Liberty Mutual policies also contains a pollution exclusion, which states:

> This insurance does not apply:
>
> (f)     to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

(*Id.*)

25.     Item 4 of the Declarations in the Liberty Mutual policies is the Schedule-General Liability Hazards, which identifies the insured's operations and the applicable underwriting classification and the premium assigned to each such operation. (*Id.*)

26.     Blueside is specifically identified in the Schedule of each of the Liberty Mutual policies and a separate premium is charged for bodily injury and property damage coverage based on Blueside's operations. (*Id.*)

27.     Berkshire was added as an additional named insured through an endorsement effective September 4, 1981 and continued to be an additional named insured until Liberty Mutual's coverage ended on July 1, 1985. (*Id.*)

28.     Section III of each of the Liberty Mutual policies includes the following language:

> This insurance does not apply to **bodily injury** or **property damage** arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as a **named insured**.

(*Id.*)

29.    Prime Tanning Corp. is not identified as an insured in any of the Liberty Mutual policies.

30.    Neither Elementis LTP LP nor Wismo Chemical Corp. is identified as an insured in any of the Liberty Mutual policies.

                    Respectfully submitted,

                    /S/ Michael Richards
                    MICHAEL RICHARDS, ESQUIRE
                    TROUBH HEISLER, PA
                    511 CONGRESS STREET
                    PO BOX 9711
                    PORTLAND, MAINE 04104-5011
                    PHONE (207) 780-6789
                    FAX (207) 774-2339
                    ATTORNEYS FOR DEFENDANT
                    LIBERTY MUTUAL INSURANCE
                    COMPANY

Of Counsel:
John C. Sullivan, Esquire
Post & Schell, P.C.
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Phone: (215) 587-1000
Fax: (215) 587-1444

# UNITED STATES DISTRICT COURT
## for the
# DISTRICT OF MAINE

### **CERTIFICATE OF SERVICE**

I hereby certify that on 12th day of April, 2010, I electronically filed the above Statement of Material Facts of Defendant Liberty Mutual Insurance Company with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

James D. Poliquin, Esquire
NORMAN, HANSON & DeTROY, LLC
415 Congress Street
P.O. Box 4600
Portland, ME 04112-4600
jpoliquin@nhdlaw.com

John C. Sullivan, Esquire
Post & Schell, P.C.
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
jsullivan@postschell.com

/S/Michael Richards_____
MICHAEL RICHARDS, ESQUIRE
TROUBH HEISLER, PA
511 CONGRESS STREET
PO BOX 9711
PORTLAND, MAINE 04104-5011
PHONE (207) 780-6789
FAX (207) 774-2339
ATTORNEYS FOR DEFENDANT
LIBERTY MUTUAL INSURANCE
COMPANY